Filed 6/30/26; Certified for Publication 7/22/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUDARSHAN KUMAR,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>        Defendant and Respondent. | A173097<br><br>(Alameda County Super. Ct. No. 23CV026531) |

In January 2021, Sudarshan Kumar discovered mold caused by a leaky water heater in the garage of his rental property and submitted a claim to his property insurer, Mid-Century Insurance Company (Mid-Century). After investigating, Mid-Century issued partial payment and "clos[ed Kumar's] claim" in February 2021. From April 2021 to January 2023, Kumar intermittently submitted additional information and requests for coverage; each time, Mid-Century responded in writing, but it never reopened Kumar's claim or otherwise extended the time to file suit.

In January 2023, Kumar filed a lawsuit against Mid-Century, seeking damages for the costs of repair and loss of use of his property. The trial court granted Mid-Century's motion for summary judgment, finding Kumar's claims barred by the one-year limitations period in his policy. On appeal,

1

Kumar raises several challenges to the trial court's ruling; none have merit. Therefore, we affirm.

## BACKGROUND

Kumar obtained a homeowners insurance policy from Mid-Century for his rental property in Fremont, California, that covered the period of October 2020 to October 2021. The policy included a "Suit Against Us" provision, which required that any lawsuit "on or arising out of" policy coverage "must be brought within one year after inception of the loss or damage," except for claims "related to an event for which a 'state of emergency' " has been declared,[1] which may be brought within "2 years after inception of the loss or damage."

In January 2021, after a tenant had "recently vacated" the rental property, Kumar "discovered water damage and mold in the garage at the Property, apparently caused by a leaking or burst water heater."

Kumar reported the damage to Mid-Century on February 3, 2021. Mid-Century began investigating the claim and spoke with Kumar's water heater technician, who "confirmed that the hot water heater was leaking due to age related wear and tear" and noted "mold throughout the garage." In reviewing photos of the garage provided by Kumar, the Mid-Century claims adjuster also observed black mold and informed Kumar over the phone that mold was not covered by his policy.

On February 10, 2021, Mid-Century mailed Kumar a "Claim Outcome Letter," denying his claim. The letter explained that Mid-Century's "investigation revealed that [Kumar's] hot water heater failed due to age

---

[1] As defined by the California Government Code, a state of emergency is "the duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons and property within the state" including, as relevant here, "epidemic." (Gov. Code, § 8558, subd. (b).)

2

related wear and tear causing mold damage," which "are uninsured and/or excluded from coverage under [Kumar's] policy." Therefore, there was "no coverage," and Mid-Century would not pay for any damages or losses incurred. Still, Mid-Century dispatched "ServiceMaster" "to do a final moisture check/inspection" "to determine whether there was any covered damage."

The February 10 letter included excerpts from the relevant portions of Kumar's insurance policy, including the "Suit Against Us" provision, and closed with this statement also at issue on appeal: "We've completed the adjustment of your loss and we are closing your claim. While we welcome any additional information you may wish to provide, the claim will not be reopened unless we notify you of such in writing."

After its inspection of the property, "ServiceMaster confirmed that there were drywall surfaces in the garage that were impacted by the sudden release of water from the water heater." "Based on the new information received from ServiceMaster" suggesting "a sudden release of water from the water heater," Mid-Century determined that "the water damage to the drywall was covered under the Policy."

Accordingly, on February 16, 2021, Mid-Century mailed Kumar another "Claim Outcome Letter" and check for $5,010.93, along with a breakdown of the covered losses. Again, the letter closed with the "Suit Against Us" provision and a statement that Mid-Century had "completed the adjustment of [Kumar's] loss" and was "closing [his] claim." The letter continued, "the claim will not be reopened unless we notify you of such in writing" and further stated: "Submission of supplemental claims and requests for recoverable depreciation, and our processing payment thereof, does not automatically reopen the claim."

On April 21, 2021, Kumar submitted to Mid-Century an estimate to rebuild the entire building (from foundation to roof) by an unidentified contractor for $555,700.[2] Mid-Century responded to Kumar the next day (April 22) with an "Investigation Status Letter," acknowledging receipt of the "additional information" provided and requesting more information "[t]o investigate [Kumar's] claim," including a "detailed contractor report explaining/clarifying the estimate" and supporting photographs. "However," the letter continued, "you must provide us this information prior to the expiration of the suit limitations time period set forth in . . . your policy." The letter closed with the "Suit Against Us" provision.

Mid-Century sent Kumar a follow-up letter on April 28, 2021, again requesting additional information about Kumar's estimate. The claims adjuster noted several attempts to contact Kumar and wrote: "I'll be happy to reopen your claim and resume handling if you provide [the requested information] within the time period outlined in your policy," and included the "Suit Against Us" provision in the letter.

Kumar did not provide the requested information.

In May 2021, Mid-Century was able to independently identify Kumar's contractor, who confirmed that he had prepared the estimate but did not recall any details, did not have any photographs, and could not explain why the work was necessary.

On May 10, 2021, Mid-Century sent Kumar another "Claim Outcome Letter": "Unfortunately, there is no additional coverage for your claim based on the facts known to us at the present time." The letter again requested a

---

[2] In the cover e-mail to Mid-Century attaching the contractor's bid, Kumar sought an additional $35,000 for "plumbing," $50,000 for "Plan & engineering," and $50,000 for "City fees," for a total request of "$690,700." Kumar did not provide documentary support for these additional fees.

4

contractor report and supporting photos "for consideration of coverage," and asked Kumar to "provide . . . this information prior to expiration of the suit limitations period" in the policy. The letter closed with the "Suit Against Us" provision of Kumar's policy.

In June 2021, Kumar sent Mid-Century additional photographs of mold and dry rot at his property. The same month, Mid-Century responded in writing, reiterating its denial of coverage. The letter again included the "Suit Against Us" provision and stated that Kumar's "claim will not be reopened unless we notify you of such in writing."

Later that month, Kumar e-mailed Mid-Century, asserting that the water damage qualified as a sudden and accidental loss covered under the policy. In response, Mid-Century retained an engineering firm to inspect Kumar's property, which occurred on July 13, 2021. The engineering firm opined in a written report that the damage caused by the water heater was "minor and consisted primarily of mold," which was not covered under Kumar's policy even "in combination with" a sudden release of water; thus, Mid-Century reaffirmed its denial of coverage by letter dated July 22, 2021. The letter closed with the "Suit Against Us" provision.

In September 2021, Kumar again contacted Mid-Century regarding his claim, and Mid-Century responded by letter dated October 4, 2021, which "attached" Mid-Century's July 22 denial of coverage.[3]

Eleven months later, on August 2, 2022, Kumar contacted Mid-Century, which responded by letter on August 3.[4] Mid-Century's response

---

[3] Kumar's September 2021 letter to Mid-Century is not part of the record on appeal; we have only Mid-Century's response, which acknowledges "receipt of [Kumar's] letter dated 9/21/2021."

[4] Again, Kumar's August 2022 letter to Mid-Century is not part of the record; we have only Mid-Century's response, which acknowledges "receipt of

5

contained seven enumerated points referring Kumar to prior communications and requested that Kumar "submit any additional information for [Mid-Century's] review."

In January 2023, Kumar e-mailed Mid-Century, which responded by letter on January 17, 2023.[5] "In relation to [Kumar's] loss of use claim," the letter explained that additional information was needed "to be able to review [Kumar's] request for consideration of additional coverage." The letter requested the information "prior to expiration of the suit limitations time period" and included the "Suit Against Us" provision.

The next day (January 18, 2023), Kumar, acting on his own behalf, filed the underlying lawsuit, asserting causes of action for breach of contract, breach of the covenant of good faith and fair dealing, intentional and negligent misrepresentation, fraud, and unfair competition, and seeking damages for "cost of repair . . . for the water damages" and "loss of use of insured property."[6] In May 2024, Mid-Century answered the complaint with

---

[Kumar's] letter dated 8/2/2022." Mid-Century's letter also references a letter sent to Kumar "on 3/28/22," which is not part of the record either.

[5] Kumar's e-mail is not part of the record; however, Mid-Century's response acknowledges receipt of Kumar's "e-mail dated 1/13/2023."

[6] Generally, Kumar alleged Mid-Century failed to pay "for damages as required by contract" and did not pay "the fair amount which was 8 to 10 times more than the initial amount paid by [Mid-Century]." Kumar also alleged Mid-Century was "knowingly hiding information" from its investigation and "failed to quote from the insurance policy" the specific provisions "that prevented it [from] pay[ing Kumar's] claim." For his fraud and unfair competition claims, Kumar alleged Mid-Century engaged in a "fraudulent claim process" by paying a "very small amount first" and forcing the claimant to "spend[ ] lots of effort" to recover the "fair amount" under the policy, and gained an "unfair advantage in the competitive insurance market" by "willfully pa[y]ing less in damage[s]."

6

a general denial and several affirmative defenses, including an affirmative defense based on the "contractual" limitations period.

In November 2024, Mid-Century filed a motion for summary judgment on the basis that Kumar's complaint was time barred under the policy's one-year limitations clause.

Kumar opposed the motion but did not object to any of Mid-Century's evidence. Although Kumar acknowledged "the 1-year contractual limitations" period, he argued the limitations period was never triggered because Mid-Century did not issue an "unequivocal denial" of coverage. Alternatively, Kumar claimed the one-year limitations period was equitably tolled, that Mid-Century was estopped from asserting a limitations defense, and that the state of emergency related to COVID-19 extended the limitations period.

In support, Kumar submitted his own declaration explaining that his "Limited English Proficiency" required him to "rely heavily on Mid-Century's oral explanations" because he could "only partially interpret" the written notices. Kumar claimed unknown "Mid-Century representatives" told him "in early 2021" that he "had 'two years' from the date of the loss" to file a claim. Kumar further offered his interpretation of Mid-Century's letters, stating that because the letters "welcomed additional materials," they "undercut any sense that the claim was finally denied."

Kumar also filed a responsive separate statement and requested the court take judicial notice of several documents, including an April 3, 2020 notice by the California Insurance Commissioner purportedly "directing insurers to extend policyholder deadlines by at least 90 days beyond the end of the COVID-19 state of emergency."

Mid-Century filed a reply and objections to Kumar's evidence.

7

The court issued a tentative ruling granting Mid-Century's motion. After hearing argument, the court took the matter under submission and subsequently issued an order granting Mid-Century's motion without ruling on Mid-Century's objections. The court also granted Kumar's request for judicial notice.

The court concluded that Mid-Century issued an unequivocal denial of Kumar's claim in February 2021, "giving [Kumar] until February 2022, to file any action relating to property coverage under the Policy. [Citation.] As the current action was not filed until January 18, 2023," the trial court found "that the claims alleged therein are time-barred." The court entered judgment in favor of Mid-Century in March 2025.

Kumar filed a timely notice of appeal.

## DISCUSSION

The purpose of summary judgment is to allow courts to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

A defendant may obtain summary judgment by showing that there is a complete defense to the plaintiff's claims, such as the expiration of the statute of limitations. (*Genisman v. Carley* (2018) 29 Cal.App.5th 45, 49 ["The expiration of the applicable statute of limitations is [a] complete defense"].) When a defendant moves for summary judgment based on an affirmative defense, the defendant must first establish the elements of that defense, and then "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484, citing Code Civ. Proc., § 437c, subds. (o)(2), (p)(2).)

We review orders granting summary judgment de novo. (*Applegate v. Carrington Foreclosure Services, LLC* (2025) 112 Cal.App.5th 356, 364.) We consider both parties' evidence, except that to which an objection has been sustained, viewing the evidence "in the light most favorable to plaintiffs as the losing parties, liberally construing their evidentiary submission while strictly scrutinizing [the defendant's] showing." (*McCurry v. Singh* (2024) 104 Cal.App.5th 1170, 1175.)

On appeal, we " 'apply the same three-step analysis as the trial court.' " (*Zaragoza v. Adam* (2025) 109 Cal.App.5th 113, 118.) " ' "First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Id.* at p. 118.)

In his appeal, Kumar argues: (1) the trial court applied the wrong legal standard by failing to " 'liberally construe' " Kumar's evidence in his favor; (2) Mid-Century did not carry its moving burden because it "never even established the actual date of loss inception—a necessary predicate to calculate the limitations period" and "also failed to negate [Kumar's asserted] tolling and extensions doctrines" defenses; (3) even if Mid-Century met its moving burden, Kumar raised triable issues of fact; (4) the court's evidentiary rulings were an abuse of discretion; (5) Mid-Century's "noncompliance" with California Code of Regulations barred it from enforcing the limitations period; and, (6) Kumar's claims for fraud and misrepresentation were not "seeking policy benefits" and thus not subject to the policy's one-year limitations period.

9

Considering each of Kumar's arguments within the three-step framework described above, we conclude summary judgment was proper. Mid-Century unequivocally denied Kumar's claim, at the latest, on February 16, 2021, when it issued partial payment and closed his file. Because no emergency limitations extension applied, Kumar's January 18, 2023 complaint was untimely under the contractual one-year limitations period, and Kumar fails to raise a triable issue of material fact.

## I. Limitations Period and Tolling in Insurance Policy Disputes

In California, the limitations period applicable to insurance policy disputes "is technically a contractual provision limiting the time in which a suit can be brought," however, "it is statutory in origin and considered to be akin to a statute of limitations." (*Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, 756.) Insurance Code section 2071 contains the standard form fire insurance policy, which fire insurers must use; other peril insurers are not required to use the form but must provide coverage that is substantially similar to or more favorable than the statutory form. (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 458–459.)

Here, consistent with Insurance Code section 2071, Kumar's insurance policy provides a one-year period to file a lawsuit except for claims for loss or damages "related to an event for which a 'state of emergency' . . . has been declared," which are subject to a two-year limitations period. (See also Ins. Code, § 2071 ["No suit or action on this policy for the recovery of any claim shall be sustainable in any court . . . unless commenced within 12 months" after the loss]; Gov. Code, § 8558, subd. (b) [defining state of emergency].) In either case, the limitations period "begins to run . . . when appreciable damage occurs and is or should be known to the insured." (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 678 (*Prudential*).)

10

However, "the statute of limitations is tolled 'from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing.' " (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1162 (*Hydro-Mill*).)  This tolling period allows the insurer to investigate the claim before making a coverage decision and "applies to contractual limitations provisions in an insurance policy as well as statutory provisions." (*Id.* at pp. 1162–1163.)

The formal denial requirement "has been construed to mean 'unequivocal' denial in writing." (*Migliore v. Mid-Century Ins. Co.* (2002) 97 Cal.App.4th 592, 604 (*Migliore*).)  By requiring an unequivocal denial in writing, " 'the need to resolve such evidentiary conflicts [concerning when the insured learned that the insurer had denied a claim] is entirely eliminated.' " (*Hydro-Mill*, *supra*, 115 Cal.App.4th at p. 1163.)  Thus, neither the insurer's invitation for further information, nor the insured's subsequent request for reconsideration will undermine an otherwise unequivocal denial.  (*Migliore*, at p. 605 ["fact that [insurer] invited further input from [insured]" did not render the denial "equivocal"]; *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 148 (*Singh*) [insured's request for reconsideration did not reopen tolling period].)

Nonetheless, under the doctrine of estoppel, an insurer may be prohibited from asserting a statute of limitations defense "where it has caused the insured to delay filing suit until after the expiration of the time period." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1090; *Prudential*, *supra*, 51 Cal.3d at p. 690 ["an insurer that leads its insured to believe that an amicable

11

adjustment of the claim will be made, thus delaying the insured's suit, will be estopped from asserting a limitation defense"].)

Estoppel can be based on an insurer's affirmative conduct (*Hydro-Mill*, *supra*, 115 Cal.App.4th at pp. 1165–1166), or an insurer's failure to comply with "the relevant regulations," e.g., California Code of Regulations. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange*, *supra*, 132 Cal.App.4th at p. 1091 & fn. 11.) As relevant here, California regulations require that "every insurer shall provide written notice of any statute of limitations or other time period requirement upon which the insurer may rely to deny a claim," except where a claim has been settled by payment. (Cal. Code Regs., tit. 10,[7] § 2695.7, subd. (f) (section 2695.7(f)).)

## II. Issues Framed by the Pleadings

Beginning with the complaint, Kumar argues that his claims for fraud and misrepresentation were not seeking policy benefits and thus not subject to the policy's one-year limitations period. Specifically, Kumar suggests that his fraud and misrepresentation claims "are independent torts premised on post-claim conduct, not on any breach of the insurance contract itself." However, given a fair reading, Kumar's complaint is based entirely on recovering policy benefits and asserts no independent tort claims. In any event, Kumar forfeited this argument by not making it below.

"The applicable limitations period is determined by the gravamen of the complaint rather than the named cause of action." (*Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 299.) Where a plaintiff "seeks to recover benefits under the policy, she is bound to the contractual one-year limitations period." (*Id.* at p. 299.)

---

[7] Further undesignated code references are to title 10 of the California Code of Regulations.

12

As asserted in his complaint, Kumar's fraud and misrepresentation claims were based on his allegations that Mid-Century's "external firm" (i.e., the engineering firm that inspected Kumar's garage in July 2021) "was intentional misrepresentation" because the firm "never produced any estimates" and did not answer Kumar's questions.  Rather, the external firm allegedly "gave [a] misleading and incorrect estimate" so that Mid-Century could pay a "small amount hopping [*sic*] claimants may not have time or resources (attorney etc[.]) to collect [a] fair amount."  Kumar's unfair competition claim alleged that by "willfully pa[y]ing less in damage[s]" to policyholders, Mid-Century gains an "unfair advantage in competitive insurance markets."  The prayer for relief sought the "cost of repair . . . for the water damages for insured property," "loss of use of insured property," "[c]ost of suit (time and material)," and punitive damages.

Here, Kumar's claims all seek damages for losses that Kumar alleges were covered by the policy and all stem from Mid-Century's alleged failure to pay policy benefits rather than any separate conduct or additional harm.  As such, they are claims on the policy and are subject to its limitations period. (*Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291, 1301 (*Jang*) ["an insured may [not] avoid the policy's statute of limitations by simply recasting contractual claims as claims sounding in tort" because "an action seeking damages recoverable under the policy . . . is merely a 'transparent attempt to recover *on the policy*' "].)

In arguing a longer limitations period should apply, Kumar relies on three inapt cases:  *State Farm Fire & Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604 (*State Farm*); *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 (*Murphy*); and *Frazier v. Metropolitan Life Ins. Co.* (1985)

13

169 Cal.App.3d 90 (*Frazier*).[8] *State Farm* does not help Kumar because there, the Court of Appeal rejected the insured's attempt to avoid the policy's one-year limitations period and issued a writ of mandate directing the trial court to enter summary judgment in favor of the insurer. (*Id.* at pp. 610–613.)

Additionally, in *Jang*, a different panel of this Division comprehensively explained why it believed that *Murphy* and *Frazier* were "wrongly decided." (*Jang, supra*, 80 Cal.App.4th at p. 1301; see also *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1192–1195 [discussing "several recent cases strongly indicating that plaintiffs' pleaded claims must be considered 'on the policy' " and declining to follow plaintiffs' "two antecedent cases" *Murphy* and *Frazier*].)

We need not revisit *Jang*'s (or *Prieto*'s) conclusion today because Kumar failed to argue his fraud and misrepresentation claims were independent tort claims below.[9] (*Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152 [" ' "issues not raised in the trial court cannot be raised for the first time on appeal" ' "].) Kumar's opposition in the trial court makes no attempt to distinguish his claims for misrepresentation or fraud as tort claims, nor does it cite *Murphy*, *Frazier*, or *State Farm*. Accordingly, we

---

[8] However, Kumar does not provide citations—full or partial—anywhere in his opening brief for these three cases. He remedies this problem for two of the three cases on reply.

[9] In addition to failing to argue that any of his claims were subject to a longer limitations period in the trial court, Kumar does not include any argument in this appeal that his unfair competition claim is subject to a longer limitations period. Therefore, we need not address it. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 [" ' "Issues not raised in the appellant's [opening] brief are deemed waived or abandoned" ' "].)

14

reject Kumar's argument that his causes of action for fraud and misrepresentation are independent torts not governed by the policy's one-year limitations period.[10] (*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1063 ["attempt to recover '[d]amages for failure to provide benefits under [a] contract of insurance' " is " 'fundamentally a claim on the policy' "].)

### III. Moving Burden

Under the second step, Kumar argues that Mid-Century failed to meet its moving burden because it did not establish "the actual date" that the limitations period began to run. Even if Mid-Century could establish a date certain, Kumar argues that it still "failed to negate tolling and extension doctrines that are part-and-parcel of the limitations issue." We disagree with both points, and therefore, we also reject Kumar's related claim that "the

---

[10] Kumar additionally suggests that the delayed discovery rule precludes granting summary judgment. The delayed discovery rule " 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action' "; however, a plaintiff attempting to rely on the rule must plead both the time and manner of discovery and the inability to have made the discovery earlier. (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 156–157.) Here, Kumar's complaint makes no allegations regarding delayed discovery, his opposition to Mid-Century's motion for summary judgment made no mention of the doctrine, and, in his opening brief, Kumar's argument in favor of the doctrine contains no citation to the record. In any event, the discovery rule applies to delayed discovery of the factual elements of a claim, not Kumar's purported delayed discovery of the applicable statute of limitations. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398 [discovery rule applies to "factual basis, as opposed to a legal theory"].) Here, there is no dispute about when Kumar *discovered* the damage (i.e., the accrual of the cause of action) because he declared that he "discovered water damage and mold in the garage" on January 19, 2021, and "notified Mid-Century of the loss" on February 3, 2021.

trial court misapplied the governing legal standard" by finding Mid-Century met its moving burden.

"A defendant moving for summary judgment has an initial burden to show the plaintiff's 'action has no merit,' and it may sustain this burden by establishing a 'complete defense' to the plaintiff's claims." (*Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 651.) If the affirmative defense contains an exception, then the defendant "must also negate the exception as part of its initial burden on summary judgment if, but only if, the complaint alleges facts triggering potential applicability of the exception." (*Id.* at p. 651; *County of San Diego v. Superior Court* (2015) 242 Cal.App.4th 460, 469 [same].) Thus, a moving defendant "[does] not have to negate all possibilit[ies] . . . to shift the burden of production to the plaintiff[ ]." (*Chang v. Southern California Permanente Medical Group* (2026) 120 Cal.App.5th 154, 164; *Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4 ["A defendant moving for summary judgment need address only the issues raised by the complaint"].)

To start, assuming arguendo Mid-Century was required to establish "the actual date" that the limitations period began to run, it sufficiently established that date as February 16, 2021, at the latest.[11] It is undisputed that Kumar reported his claim to Mid-Century on February 3, 2021. It is also undisputed that on February 16, Mid-Century sent Kumar a letter and issued payment to Kumar for covered damages minus Kumar's deductible. The February 16 letter explained that "wear, tear, mold, [and] rust . . . are uninsured and/or excluded from coverage under [Kumar's] policy."

---

[11] The trial court concluded Mid-Century's February 10 denial ended the tolling period. Because Kumar's complaint is untimely under either date, we use the February 16 denial, which accompanied a settlement payment.

16

"However," the letter continued, "there is coverage for the ensuing water damage," which was set forth in an accompanying breakdown of the payment amount. The letter stated that any claim for coverage "must be brought within one year after inception of the loss or damage" and explained that Mid-Century had "completed the adjustment of [Kumar's] loss and [was] closing [his] claim." The letter concluded: "Submission of supplemental claims and requests for recoverable depreciation . . . does not automatically reopen the claim." No reasonable trier of fact could conclude that the February 16 letter was anything but an unequivocal denial of coverage. (See *Marselis v. Allstate Ins. Co.* (2004) 121 Cal.App.4th 122, 126 ["After settlement, there is no pending claim to which the tolling rule might apply"]; *Migliore*, *supra*, 97 Cal.App.4th at p. 605 [insurer's request for additional information and willingness to reconsider its decision "does not render a denial equivocal"].) Thus, Kumar's January 18, 2023 complaint was well beyond the one-year period that resumed on February 16, 2021, at the latest.

Further, the state of emergency two-year extension of the limitations period alleged by Kumar in his complaint does not apply. Kumar alleged: "California was under 'State of Emergency' hence statute of limitations for claim is two years." In its motion for summary judgment, Mid-Century argued the extension did not apply because, based on relevant legislative history, "for the 'state of emergency' extension . . . to apply, the loss at issue must be connected to the disaster for which a state of emergency has been declared." However, according to Mid-Century, the complaint alleged Kumar's "damage was from a leaking water heater" and therefore was "simply not related to the COVID-19 state of emergency." Indeed, Kumar alleged the damage "was due to accidental water leak from water heater burst" without any reference to a state of emergency or increased damage

17

caused by delay in repair due to the COVID state of emergency. Accordingly, Mid-Century used Kumar's own allegations to make a prima facie showing that the emergency exception did not apply. (*Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1214 [a moving defendant's " 'initial burden of production [is] to make a *prima facie showing* of the nonexistence of any triable issue of material fact' " (italics added)].) Thus, we reject Kumar's related claims that the trial court made "an improper determination of a disputed fact" or wrongly "placed the burden on Mr. Kumar to disprove the limitations defense rather than holding Mid-Century to its burden to prove it."

In addition, the trial court's conclusion that Mid-Century's letter was an unequivocal denial was not an improper determination of fact. Kumar argues this finding contravenes the court's obligation to " 'liberally construe' " the evidence in his favor, but the only other relevant evidence is Kumar's own declaration, wherein he claims that he "understood" Mid-Century's invitation to submit additional information "to mean that coverage for some aspect of the damage was still being acknowledged" and thus the denial was equivocal. However, in the same declaration, Kumar acknowledges that Mid-Century's letter expressly " 'closed' " his claim.

Thus, even liberally construing Kumar's evidence, his understanding that the claim remained open is, at best, a subjective belief, and Kumar offers no authority indicating that subject belief is relevant to determining if a written letter is unequivocal. To the contrary, both the February 16 letter and applicable case law clarify that "A statement of willingness to reconsider does not render a denial equivocal," nor does an insured's unilateral requests for reconsideration. (*Migliore, supra,* 97 Cal.App.4th at p. 605; *Singh, supra,* 63 Cal.App.4th at p. 145.) Indeed, inquiry into the insured's subjective belief

18

is contrary to the policy of avoiding " 'the need to resolve such evidentiary conflicts [concerning when the insured learned that the insurer had denied a claim]' " underpinning the written denial requirement. (*Hydro-Mill*, *supra*, 115 Cal.App.4th at p. 1163.)

Likewise, Kumar's claim that the trial court improperly "placed the burden on Mr. Kumar to disprove the limitations defense" is based on Kumar's misstatement of the law that Mid-Century needed to "show[ ] that even under all potential tolling scenarios, the suit was late." But a moving party does "not have to negate all possibilit[ies]" to shift the burden and expressly has "no burden to disprove" "defenses not sufficiently put at issue" by the complaint. (*Chang v. Southern California Permanente Medical Group*, *supra*, 120 Cal.App.5th at p. 164; *Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 508, 507.) Here, Mid-Century's moving papers addressed Kumar's alleged emergency extension, and Mid-Century had no obligation to anticipate Kumar's unalleged estoppel defense.

Ultimately, the trial court correctly concluded that Mid-Century met its moving burden and shifted the burden to Kumar to raise a triable issue of material fact.

## IV. Triable Issue of Material Fact

For his remaining claims, Kumar asserts he raised a triable issue of material fact. Specifically, Kumar challenges whether the denial of his claim was clear and unequivocal, and whether Mid-Century's "conduct tolled the limitations period or induced Mr. Kumar to delay filing (estoppel)." Kumar also claims that his suit was timely under the 24-month limitations period for "emergency-related losses" and, in any event, Mid-Century's "noncompliance"

19

with California Code of Regulations barred it from enforcing the limitations period.

## A. Clear and Unequivocal Denial

Pointing again to Mid-Century's invitation to submit additional information, Kumar claims his "declaration and the content of Mid-Century's letters demonstrate that Mid-Century's communications were anything but unequivocal." Kumar acknowledges that *Milgiore*, *supra*, 97 Cal.App.4th 592 and *Singh*, *supra*, 63 Cal.App.4th 135 foreclose his argument but persists in asserting that "those cases were decided on the specific facts and do not hold that in *every* instance of continued communication means the denial was clear." "Here, by contrast," Kumar argues, Mid-Century's letters never used the words " 'no further benefits will be provided' " and "went on over an extended period." Even considering the factual circumstances, Kumar fails to raise a triable issue about the nature of Mid-Century's denials.

Mid-Century's February 16 letter clearly stated: "We've completed the adjustment of your loss and we are closing your claim. While we welcome any additional information you may wish to provide, the claim will not be reopened unless we notify you of such in writing." *Milgiore* rejected Kumar's argument that specific verbiage was necessary for an unequivocal denial (*Milgiore*, *supra*, 97 Cal.App.4th at p. 605 ["Nor does the failure to use the words deny or denial render a denial equivocal"]), and Mid-Century "made no representation here that it would reopen [Kumar's] file." (*Singh*, *supra*, 63 Cal.App.4th at p. 144.) The February 16 letter eliminated any potential uncertainty regarding the start of the limitations period because it "outline[d]" Kumar's "claim settlement" and provided payment. (See *Marselis v. Allstate Ins. Co.*, *supra*, 121 Cal.App.4th at p. 126 ["After settlement, there

is no pending claim to which the tolling rule might apply"].) Thus, the February 16 denial was an unequivocal denial that stopped the tolling period.

Also, contrary to Kumar's suggestion, the factual timeline in *Milgiore* closely mirrors the present circumstances. In *Milgiore*, the insurer denied Milgiore's initial claim for property damage sustained in the Northridge earthquake. (*Milgiore*, *supra*, 97 Cal.App.4th at p. 596.) Milgiore submitted another claim following an aftershock, which her insurer paid and closed Milgiore's file in a letter similar to Kumar's denial. (*Id.* at p. 597.) Years later, Milgiore submitted additional information, and her insurer "agreed to a follow-up investigation" but ultimately denied the claim as untimely. (*Id.* at p. 601.) Milgiore filed suit, a jury found Milgiore's claim was untimely, and judgment was entered in favor of Milgiore's insurer; the Court of Appeal affirmed judgment, finding neither the invitation for additional information nor the follow-up investigation rendered the denial equivocal. (*Id.* at pp. 601–603, 605, 612.)

Ultimately, on at least five separate occasions in 2021, Mid-Century expressly stated: "We've completed the adjustment of your loss and we are closing your claim." Mid-Century's communications also directly quoted the "Suit Against Us" clause from Kumar's policy, which sets forth the one-year limitations period. Thus, despite Kumar's attempts to inject ambiguity, he fails to raise a triable issue of fact regarding the unequivocal nature of Mid-Century's denials.

## B. Estoppel

Second, Kumar argues Mid-Century is estopped from asserting a limitations defense. However, Kumar never made any such allegations in his complaint, thus, the argument is not a cognizable basis for opposing Mid-Century's motion for summary judgment. (*Bosetti v. United States Life Ins.*

*Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1225 [plaintiff's "theory was not cognizable" in opposition to motion for summary judgment because "it was not pleaded in [the] complaint"]; *Government Employees Ins. Co. v. Superior Court, supra*, 79 Cal.App.4th at p. 98, fn. 4 ["the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers"].)

Even if it were cognizable, Kumar's estoppel argument lacks merit.[12] To estop Mid-Century from asserting its limitations defense, Kumar must show: (1) Mid-Century knew of the limitations period; (2) Mid-Century intended to induce Kumar to refrain from filing a lawsuit; (3) Kumar was ignorant of the true facts; and (4) Kumar relied upon Mid-Century's acts or omissions. (*Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1268.)

Here, Kumar argues that Mid-Century intended to mislead him by "repeatedly telling" him to " 'please submit any additional information for our review.' " But any such invitation by Mid-Century was in response to a request or information from Kumar and thus does not support his estoppel claim. (*Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co.* (2016) 2 Cal.App.5th 1218, 1225 [" 'Holding that [the insurer] may

---

[12] In his opening brief, Kumar spends three pages arguing that factual issues regarding estoppel preclude summary judgment but provides only one citation to the record despite multiple argument based on (and explicit references to) matters in the record. Thus, Kumar's inadequate briefing on his estoppel argument provides an independent basis for rejecting this claim. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 [" 'Any statement in a brief concerning matters in the appellate record— whether factual or procedural and no matter where in the brief the reference occurs—*must be supported by a citation to the record*' "]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 ["courts will decline to consider any factual assertion unsupported by record citation *at the point where it is asserted*" (italics added)].)

inadvertently extend the limitations period by answering claimants' inquiries or by considering new information "would contravene a strong public policy to encourage an insurance company to reconsider its original denial when confronted with potentially new facts" ' "].) Further undermining Kumar's estoppel argument, the invitations were accompanied by a clear statement that Kumar's claim was being closed and a repeated disclosure of the limitations period. (Cf. *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, *supra*, 71 Cal.App.4th at pp. 1264, 1268–1269 [triable issue on estoppel where insurer never "advise[d] [the insured] of the 12-month limit in the exchange of correspondence relating to the claim"]; *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152 [estoppel available where insurer "advised [the insured] not to file a claim" but "reaffirm[ing] our holding . . . [citation], that a denial of coverage, even if phrased as a 'representation' . . . offers no grounds for estopping the insurer from raising a statute of limitations defense"].) Thus, Kumar fails to provide any factual basis for his estoppel claim.

To the extent Kumar declared that unknown "Mid-Century representatives" "told [him] that [he] had 'two years' from the date of the loss if [he] disagreed with the settlement," neither his complaint nor his responsive separate statement made any mention of the purported oral representations and thus the court was not required to consider Kumar's declaration promoting new facts and theories. (*Berlanga v. University of San Francisco* (2024) 100 Cal.App.5th 75, 87 ["A plaintiff opposing summary judgment may not raise facts as legal theories not encompassed by his complaint to defeat a summary judgment motion"]; *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226 [" 'Opposition separate statements must cite to facts and evidence for the evidence to be

considered by the court' "].)  As such, Kumar fails to raise a triable issue of material fact with respect to estoppel.

## C.  State of Emergency

Third, Kumar argues his loss was related to the COVID-19 pandemic (and thus subject to the two-year limitations period) because his "ability to detect, mitigate, or repair the damage *may have been* impeded by lockdowns or contractor unavailability."  (Italics added.)

Kumar's policy and Insurance Code section 2071 both state:  "if a covered loss or damage *is related to* an event for which a 'state of emergency' " has been declared, then the "time limitation for Suit Against Us has been extended from 1 year to 2 years after inception of the loss or damages." (Italics added; see also Ins. Code, § 2071 ["If the loss is related to a state of emergency . . . , the time to bring suit is extended"].)

But Kumar offered no evidence that *his loss or damage* was related to the state of emergency.  Instead, Kumar declared that he "faced numerous delays obtaining contractor estimates, scheduling inspections, and communicating with engineers because of the pandemic," but these are efforts to remediate the loss or damage; they began after the loss or damage occurred in 2021 and are not themselves the loss or damage.  Thus, delays related to remediation efforts are insufficient to trigger the emergency extension.

Likewise, we are unpersuaded that the California Insurance Commissioner's notice creates a triable issue of fact.  The notice—which Kumar admits is "non-binding"—"notifie[s]" insurers "that they should not attempt to enforce policy or statutory deadlines on policyholders until ninety (90) days after the end of the statewide 'state of emergency.' "  However, Mid-Century did not deny Kumar's claim based on a policy or statutory deadline;

24

rather, it denied his claim because the losses were "uninsured and/or excluded from coverage under [Kumar's] policy." Mid-Century did not attempt to enforce the policy deadline until after Kumar filed his complaint in January 2023. Thus, we fail to see how the California Insurance Commissioner's notice helps Kumar.

### D. California Code of Regulations

Fourth, Kumar claims that "[b]ecause [he] was unrepresented during the claims process, § 2695.7(f) obligated Mid-Century to send a stand-alone, written warning that (1) identified the legal time bar it 'may rely on to deny a claim,' and (2) provided the 'expiration date,' i.e., a calendar deadline, at least 60 days before it would expire," both of which Kumar contends "it failed to do."[13] We see several problems with Kumar's argument.

Section 2695.7(f) provides: "Except where a claim has been settled by payment, every insurer shall provide written notice of any statute of limitations or other time period requirement upon which the insurer may rely to deny a claim."

Preliminarily, it is not clear that section 2695.7(f) applies here. Mid-Century made a settlement payment on February 16, and to the extent Mid-Century denied Kumar's claim, it did so because his policy did not cover wear and tear or mold. Thus, Mid-Century did not "rely" upon the limitations period "to deny a claim." (§ 2695.7(f).) Regardless, Mid-Century did, in fact, notify Kumar of the limitations period. Mid-Century's February 10 letter

---

[13] Mid-Century contends Kumar forfeited this argument by not raising it in the trial court. Kumar makes no attempt to deny the assertion on reply. Nevertheless, because Kumar raised noncompliance with section 2695.4, subdivision (a) in his opposition filed in the trial court, we will consider Kumar's arguably related contention regarding compliance with subdivision (f) of section 2695.4.

25

disclosed California "regulations require that we provide you with written notice of any limitations period upon which we may rely to deny a claim" and quoted the "Suit Against Us" provision, which was regularly included in correspondence with Kumar.

Kumar suggests that section 2695.7(f) requires a "stand-alone written warning" that provides a date certain for the expiration of the statute of limitations, and that "[g]eneric form letters . . . do not satisfy that duty." But Kumar's selective reading of section 2695.7(f) finds no support in the text of the regulation or case law. Section 2695.7(f) does not require that the notice provide an "expiration date"; rather, the plain text of the regulation requires notice "sixty (60) days *prior to* the expiration date" of any limitations period, a timeframe with which Mid-Century complied by its February 10 letter. (Italics added.) Further, Kumar provides no support for his claim that the notice must be given in a "stand-alone" letter. The only case Kumar cites that construes section 2695.7(f) does not discuss any standalone requirement and is plainly distinguishable because the Court of Appeal found a triable issue of material fact where the insurer's denial correspondence *never* provided notice of the limitations period. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 182–183, 190.)

Thus, assuming section 2695.7(f) applies here, Kumar does not raise a triable issue of fact because Mid-Century provided timely written notice of the limitations period.

## V. Evidentiary Claims

Finally, Kumar identifies three ways the trial court purportedly abused its discretion: by "(1) minimizing the effect of the Insurance Commissioner's COVID-19 Notice as irrelevant 'guidance,' (2) failing to credit Mr. Kumar's testimony about his understanding and reliance (arguably treating it as

26

speculative or self-serving without basis), and (3) any other exclusion of evidence favorable to Mr. Kumar (such as expert testimony or documents) that created triable inferences." Because the trial court granted Kumar's request for judicial notice and did not exclude any evidence, all three claims fail.

As for the Insurance Commissioner's COVID-19 notice, Kumar requested the trial court take judicial notice of an April 3, 2020 directive to insurers "to extend policyholder deadlines by at least 90 days beyond the end of the COVID-19 state of emergency." The trial court granted Kumar's request, but Kumar faults the court for deeming the directive "only guidance." However, in his appellate briefing, Kumar agrees that the directive is nonbinding guidance. We fail to see how the trial court's recognition of the nonbinding nature of the directive constitutes an abuse of discretion.

Further, Kumar argues "[t]o the extent the trial court sustained objections to portions of Mr. Kumar's declaration," it erred. Similarly, Kumar asserts that "[i]f the trial court sustained boilerplate hearsay objections" to unidentified "Other Evidence," "that too would be an abuse [of discretion]." But as Kumar admits, these hypothetical arguments are entirely meritless because, "from the record, it appears" that the court did not sustain any objections or otherwise exclude Kumar's evidence. In short, Kumar fails to show any evidentiary error.

## DISPOSITION

The judgment is affirmed. Respondent may recover costs of appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

27

DESAUTELS, J.


We concur:


STEWART, P. J.


RICHMAN, J.


*Kumar v. Mid-Century Insurance Company* (A173097)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUDARSHAN KUMAR,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>    Defendant and Respondent. | A173097<br><br>(Alameda County Super. Ct.<br> No. 23CV026531)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

The opinion in the above-entitled matter, filed on June 30, 2026, was not certified for publication. For good cause, request for publication is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion is ordered certified for publication in the Official Reports.


Dated: _____          _____

                                                      STEWART, P.J.

1

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Frank Roesch |
| | Hon. Sarah Sanford-Smith |
| Attorneys for Plaintiff and Appellant: | Castle Legal Group, APC |
| | James Castle |
| Attorneys for Defendant and Respondent: | BHC Law Group LLP |
| | Julie E. Hayashida |
| | Susan Beneville |